IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINION RETAIL, INC. | ) | Civ. Action No. 2: 11-cv-00233 |
| | ) | |
| Plaintiff, | ) | Judge Cathy Bissoon/ |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| v. | ) | |
| | ) | |
| TIM ROGERS, TIM TERRELL, GARY SHAPIRO, and TIM BELL | ) ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM OPINION AND ORDER

This is a single count diversity action alleging breach of contract. The issue before the Court is whether Defendants should be permitted to file an untimely Amended Answer and Counterclaims. The Court will permit the filing.

Background

Plaintiff, Dominion Retail, Inc. ("Plaintiff" or "Dominion"), contends that four individual Defendants are indebted to Dominion under the terms of an August 2008 Stock Purchase Agreement ("SPA") governing Defendants' sale of stock in Cirro Energy ("Cirro").

According to Plaintiff, after Dominion purchased Defendants' stock, three events occurred that obligated Defendants to incur costs it was not obligated to pay. [ECF No. 26 at 2]. The first took place in April 2009 when the United States Internal Revenue Service conducted an audit, revealing that Cirro's "2007 corporate net income should [have been] increased by $1,826,611." [Id. at ¶16]. The IRS ultimately proposed a settlement setting the increase at $1,340,547. [Id. at 17]. Dominion advised Defendants of the settlement terms, and Defendants recommended that the compromise be accepted. Dominion paid the additional taxes assessed as a result of the income increase, and demanded a share of that payment from Defendants in

accordance with the terms of the SPA. [ECF No.1 at ¶¶ 17, 19, 20, 21]. "Dominion did not [immediately] demand the full amount of additional federal income tax actually paid in . . . settlement of the IRS Audit" because it sought "to compromise and settle the claim promptly." [Id. at ¶ 21].

Defendants refused to make any payment to Dominion. [Id. at ¶¶ 22 -25]. After multiple futile demands for payment, Dominion raised its demand by $53,875.89 to include interest due on the additional federal tax. Dominion contends that "[u]nder the terms of the Stock Purchase Agreement, Dominion is entitled to payment from Defendants in the amount of $509,661.89" representing taxes, and interest assessed as a result of the 2007 audit. [Id. at ¶26].

According to Plaintiff, a second event also contributed to the amount Dominion is entitled to recover from Defendants. This was an audit conducted by the Comptroller of Texas Sales and Use Tax which determined that Cirro owed the state $2,780,593.77 in back taxes, interest, and penalties. [ECF No. 26 at 2]. At Defendants' request, Dominion hired a firm to represent all parties in connection with the assessment. "Defendants . . . explicitly stated that by so engaging [the firm], Defendants would be 'formally assuming the defense' of any claims that [arose] from the audit for pre-closing sales taxes." [ECF No. 1 at ¶ 30]. Dominion hired the firm, agreed to share costs, and consented to the firm's recommendation that the state's settlement offer be accepted. As a result, Dominion paid $1,580,942.12 to the state of Texas, and contends that Defendants are liable to it in that amount. [Id. at ¶ 34].

The third occurrence involved a shortfall in Cirro's working capital. Some shortfall had been anticipated, as evidenced by the parties' creation of an escrow account for working capital adjustments. The shortfall, however, "exceeded the funds in escrow by $1,054,217.53." [Id. at ¶

¶ 42]. Defendants paid Dominion $920,784.53, but, according to Dominion, are liable under the SPA for the full amount of the shortfall.

This action was filed on February 11, 2011. [ECF No. 1]. On July 27, 2011, Defendants filed an Answer. [ECF No. 4]. On July 27, 2011, the Court held a scheduling conference, and the next day entered an order directing that motions to amend the pleadings be filed no later than September 30, 2011. [ECF No. 17]. On November 23, 2011, Defendants filed a Motion for Leave to File an Amended Answer and Original Counterclaim[s]. [ECF No. 24]. The issue now before the Court is whether it should grant that Motion.

Discussion

Because a scheduling order was set in this case, analysis of the Defendants' Motion begins with Fed. R. Civ. P. 16. Williams v. Sullivan, Civil No. 08-1210, 2011 WL 2119095 at *4 (D.N.J. May 20, 2011). Heightened scrutiny of a motion to amend is warranted when the motion is made after a scheduling order has been entered. Harbor Laundry Sales, Inc. v. Mayflower Textile Serv. Co., Civil Action No. 09-6259, 2011 WL 6303258 at *3 (D.N.J. 2011). Pursuant to Rule 16, the Court may revise a scheduling order "[o]nly for good cause and with the Judge's consent." Fed. R. Civ. P. 16(b)(4). In order to meet the good cause requirement of this Rule, "the party seeking the extension must show that the deadlines set in the scheduling order '[could not] reasonably be met despite the diligence of the party seeking the extension.'" Williams, 2011 WL 219095 at *4 (quoting Rule 16(b) Advisory Committee Notes to 1983 Amendments). In other words, good cause depends on the diligence of the moving party.

Good cause may also be satisfied if the movant shows that the inability to comply with a scheduling order was "'due to any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling

3

Order.'" Id. (quoting Newton v. Dana Corp. Parish Div., Civ. No. 94-4958, 1995 WL 368172 at *1 (June 21, 1995). "The Court has broad 'discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement.'" Carter v. Estate of Lewis, Civ. Action No. 08-1301, 2011 WL 5416325 at *3 (D.N.J. Nov. 7, 2011) (quoting Phillips v. Greben, Civ. No. 04-5590, 2006 WL 3069475 at *6 (D.N.J. October 27, 2006)). "In the absence of proof of good cause, 'the scheduling order shall control.'" 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 15222.1 (2D ED. 1997). Only where the party has established good cause under Rule 16, will the Court consider the liberal amendment provisions of Rule 15(a). Absent a showing of good cause under Rule 16, the provisions of Rule 15 are irrelevant. Harbor Laundry Sales, Inc., 2011 WL 6303258 at * 3.

In their Motion for Leave to Amend, Defendants do not mention Fed R. Civ. P. 16, but base their argument entirely on Rule 15: "Absent substantial reason, the court's discretion in considering a motion to amend is not broad enough to permit denial." [Id. at 2]. As the Court's review of the law establishes, however, these Defendants have put the Rule 15 cart before the Rule 16 horse.

Defendants attribute their delay to the fact that they lacked – and could not have obtained – information relevant to the counterclaims until after the deadline for filing amended pleadings had passed. According to Defendants, they "were unable to assess the viability of their counterclaims in good faith as required by Federal Rule of Civil Procedure 11, or discuss them with experts until meaningful discovery was conducted." [ECF No. 28 at 2]. Defendants state that this critical discovery was made up of documents produced in response to timely requests, and an October 5, 2011 deposition in which it was revealed "for the first time the udder [sic]

4

disregard Plaintiff had for complying with its obligations under the Stock Purchase Agreement." [Id.]. Defendants next cite Plaintiff's delay in the release of documents, and the production of the wrong documents in connection with the Texas Sales and Use Audit. [Id. at 3]. Finally, they argue that "at Plaintiff's urging," the parties agreed to an early - October 18, 2011 – standard mediation and that "plaintiff insisted that discovery be limited in scope." [Id.]. Based on these factors, Defendants argue that Fed. R. Civ. P. 15 should not preclude the filing of its counterclaims.

Plaintiff urges the Court to reject Defendants' explanation for their proposed late amendment. "Dominion opposes the motion both because it is untimely and because the amendment would be futile because the claims in the counterclaim[s] do not state claims for relief." [ECF No. 26 at 1]. According to Dominion, three of the proposed counterclaims "are not true counterclaims, but rather are simply defenses to Dominion's claims." [Id.] This is because these counterclaims do not "assert claims for affirmative relief." [Id.] "Here, by their own admission, [Defendants] are not seeking a right to payment, but rather advancing reasons that they contend excuse them from making the payments that Dominion seeks." [Id. at 9]. The last counterclaim, Plaintiff states, "does assert a claim for affirmative relief, but is contrary to the express terms of the stock purchase agreement, and, therefore, the amendment would be futile." [Id. at 1-2].

Defendants counter that Counts I, II, and IV do state affirmative claims for relief, supporting claims for additional tax exposure and for attorney's fees under the prevailing party provision of the SPA. Defendants also outline in some detail certain portions of the SPA and argue that the Agreement does not preclude recovery on the final counterclaim. [ECF No. 28 at 4-5].

The Court is convinced that the arguments mounted by the Plaintiff against permitting the Defendants to amend have moved some distance from what Rule 16(b) contemplates as a fairly straightforward determination of "good cause" to a point very close to analysis of the merits of the case. At this point in the litigation, the Court is unwilling to venture into that territory, having to guess what Defendants knew three weeks before they asked to amend, and endeavoring to unravel the text of a stock purchase agreement on less than a full record. The Court, therefore, in the exercise of its discretion, finds that Defendants' allegations are sufficient to satisfy the "good cause" requirement of Rule 16(b), and can be examined to greater effect in the context of a dispositive motion.

With the "good cause" issue resolved, the Court turns its attention to Rule 15(a)(2). See Velto v. Reliance Standard Life Ins. Co., No. 10-cv-1829, 2011 WL 810550 at *4 (D.N.J. Mar. 1, 2011). (instructing that if moving party is able to demonstrate good cause, court should proceed to Rule 15 analysis). Under Federal Rule of Civil Procedure 15(a)(2), "leave shall be freely given [for a party to amend its pleadings] when justice so requires." Id. "In the absence of substantial or undue prejudice, denial [of a motion to amend] must be grounded in bad faith or dilatory motives, truly or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Price v. Trans Union, LLC, 737 F. Supp.2d 276, 278 (E.D. Pa. 2010) (quoting Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981)). See also Foman v. Davis, 371 U.S. 178, 182 (1962); Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006); Hill v. Scranton, 411 F.3d 118, 134 (3d Cir. 2005); Adams v. Gould Inc., 739 F.2d 858, 864 (3d Cir. 1984). "The Third Circuit has consistently recognized that 'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" Schindler Elevator Corp. v. Otis Elevator Co., 2009 WL 1351578 (D.N.J.

2009) (internal citation omitted). Plaintiff has not alleged or discussed prejudice. Therefore, under Rule 15, no additional analysis is required. The Defendants' Motion to Amend will be granted.  An Appropriate Order follows.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of issuance of this Order to file an appeal to the District Judge, which includes the basis for objection to this Order.  Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto.  Failure to file a timely notice of appeal will constitute a waiver of any appellate rights.

Dated:  February 21, 2012

By the Court,

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

ORDER

For the reasons set out above, it is HEREBY ORDERED that the Motion for Leave to File Amended Answer and Counterclaim [ECF No. 24] filed by Defendants is GRANTED.

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:     Counsel of Record Via CM-ECF