IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOMINION RETAIL, INC., | ) | Civ. Action No. 2: 11-cv-00233 |
| | ) | |
| Plaintiff, | ) | District Judge Cathy Bissoon/ |
| | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| v. | ) | |
| | ) | |
| TIM ROGERS, TIM TERRELL, GARY SHAPIRO, and TIM BELL, | ) ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

This diversity-based contract dispute, the facts of which have been detailed in prior pleadings, has its genesis in an August 2008 Stock Purchase Agreement ("SPA") made between Defendants, four individual sellers, and Plaintiff, Dominion Retail, Inc. ("Dominion" or "the Buyer"). [ECF No. 1-2]. Defendants seek the Court's permission to file a Second Amended Answer and Counterclaim [ECF No. 48]. In support of that request, Defendants have submitted an Expert Report [ECF No. 48-1 at 5] which Plaintiff has moved to strike. [ECF No. 49]. The Motion to Amend will be denied, and the Motion to Strike will be denied as moot.

**Background**

Defendants' original Answer did not include counterclaims. [ECF No. 4]. In the Case Management Order filed July 28, 2011, the Court directed that motions to amend the pleadings be filed no later than September 30, 2011. [ECF No. 17]. On November 23, 2011, Defendants filed a Motion for Leave to File an Amended Answer and Original Counterclaims. [ECF No. 24]. In addition to asserting three counterclaims alleging breach of contract, Defendants sought to add several affirmative defenses. In an attempt to explain the untimeliness of their first Motion to Amend, Defendants argued that as of the deadline for amended pleadings, they were "suspicious of

Plaintiff's actions . . . [but] were unable to assess the viability of their counterclaims . . . [without] meaningful discovery . . . ." [ECF No. 29 at 2]. They contended that only after the deadline had passed did they have sufficient detail to support a counterclaim for fraud, which they gleaned from:

> (1) the production of documents in response to timely served requests for production and non-party subpoenas from August through November 2011, and (2) the deposition of Amy Anthony on October 5, 2011 in which this corporate representative revealed for the first time the udder [sic] disregard Plaintiff had for complying with its obligations under the . . . [SPA].

Id. at 2-3.

In a Memorandum Opinion dated February 21, 2012, [ECF No. 32], the Court, relying on Federal Rules of Civil Procedure 15 and 16, allowed Defendants to file the Amended Answer and Counterclaims. Defendants did so the same day. On March 12, 2012, Plaintiff filed a Motion to Dismiss Count III of Defendants' Counterclaims. [ECF No. 38]. On May 22, 2012, the Court filed a Report and Recommendation [ECF No. 43], recommending that Plaintiff's Motion be granted. The District Court adopted the Report and Recommendation. [ECF No. 47].

Because the pending Motion to Amend deals with issues substantially similar to those raised in Count III of Defendants' first Motion to Amend, the Court revisits the substance of its Report and Recommendation [ECF No. 43]. There, the Court considered "a single question: '[W]hether the Defendants have the legal [authority] to challenge [via a counterclaim] the working capital calculations of the Independent Accountants, given that the SPA provided that the [A]ccountant's determination 'be *final and binding on the parties* and . . . adjusted if and as required by such determination.'" Id. at 3 (citation omitted). The Court found that the working capital calculations of the Independent Accountants were, under the terms of the SPA, final.

In reaching this conclusion, the Court considered the four grounds upon which Defendants relied in opposing dismissal of Count III: 1) the SPA contained conditions precedent that were not met - specifically, Dominion's obligation to provide Defendants with paperwork substantiating its working capital calculation before any dispute was submitted to the Independent Accountants; 2) Plaintiff's ultimate submission to the Accountants was incomplete and failed to meet with GAAP standards; 3) the sellers were "***prepared to present evidence*** that Dominion and [the accounting firm] acted with bad faith and partiality" in calculating and communicating information regarding the working capital calculation; and 4) the Independent Accountants exceeded the scope of their authority by expressing opinions regarding tax assets. [ECF No. 41] (emphasis added).

Attempting to amend their Answer for a second time now, more than a year following the deadline for amendment of pleadings, Defendants argue that the present Motion differs in two respects from claims previously raised. First, the proposed pleading seeks to have the Court vacate the finding of the Independent Accountants under Section 2.3 of the SPA because "Dominion failed to satisfy contractually established conditions precedent before forcing the working capital dispute into the hands of the Independent Accountants; and *second* those findings were the product of fraud, undue means, partiality or corruption." [ECF No. 62 at 2].

The argument that these "new" claims are distinct from those already considered is strained. Defendants nonetheless assert that they should be permitted to reinstate challenges to the Accountants' Report, despite the fact that the District Court has rejected them. [ECF No. 47]. They also contend "new facts" articulated by their designated expert "support vacating the Independent Accountant's Report under controlling law, [due to] fraud, bad faith, partiality, and deception." Id. They write:

> Defendants seek leave to file their Second Amended Answer and Counterclaim *in order to assert affirmative claims* for relief against

> Plaintiff for Plaintiff's breach of the Stock Purchase Agreement during the preparation and delivery of the Certified Working Capital Statement to Defendants and for Plaintiff's fraudulent misrepresentations made both, in the Certified Working Capital Statement, and to the Independent Accountants] during their review. Defendants also seek to challenge the "final and binding" nature of the [Independent Accountants'] Report under controlling law which acknowledges that grounds exist to vacate an otherwise binding arbitration award when the award was the product of fraud, bad faith, partiality, or deception.

[ECF No. 48] (emphasis added).

The Court turns first to the pending Motion to Amend.

**Defendants' Motion to Amend – Fed. R. Civ .P. 16**

Because the Court's scheduling order set a September 30, 2011 deadline for amended pleadings [ECF. No. 9], analysis of the Defendants' pending Motion, begins with Fed. R. Civ. P. 16. See Williams v. Sullivan, Civil No. 08-1210, 2011 WL 2119095 at *4 (D.N.J. May 20, 2011). Heightened scrutiny of a motion to amend is warranted when the motion is made after a scheduling order has been entered. Harbor Laundry Sales, Inc. v. Mayflower Textile Serv. Co., Civil Action No. 09-6259, 2011 WL 6303258 at *3 (D.N.J. 2011). Pursuant to Rule 16, a scheduling order may be revised "[o]nly for good cause and with the Judge's consent." Fed. R. Civ. P. 16 (b)(4). In order to meet the good cause requirement of this Rule, "the party seeking the extension must show that the deadlines set in the scheduling order '[could not] reasonably be met despite the diligence of the party seeking the extension.'" Williams, 2011 WL 219095 at *4 (quoting Rule 16(b) Advisory Committee Notes to 1983 Amendments). In other words, good cause depends on the diligence of the moving party.

"The Court has broad 'discretion in determining what kind of showing the moving party must make in order to satisfy Rule 16(b)'s good cause requirement.'" Carter v. Estate of Lewis, Civ. Action No. 08-1301, 2011 WL 5416325 at *3 (D.N.J. Nov. 7, 2011) (quoting Phillips v. Greben, Civ. No. 04-5590, 2006 WL 3069475 at *6 (D.N.J. October 27, 2006)). "In the absence of proof of

good cause, 'the scheduling order shall control.'" 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 15222.1 (2d ed. 1997).

**Defendants' Assertion of "Good Cause"**

Defendants argue that even if the report of the Independent Accountants is ultimately final and binding, they should not be prevented from restating their affirmative defenses as affirmative claims:

> [P]laintiff's satisfaction of its prescribed contractual obligations with respect to preparing the Certified Working Capital Statement and providing certain information and work papers to Defendants was a condition precedent to the submission of the dispute to [the Independent Accountants]. As a result, even if the court will not allow Defendants to challenge the substance of the . . . [Accountant's Report] . . . [they] should not be precluded from challenging Plaintiff's conduct prior to [the Accountant's] involvement in the form of affirmative relief to seek reimbursement of amounts Defendants previously paid to Plaintiff out of escrow funds as a result of the purported "Shortfall Reduction." Indeed the landscape of the pleadings and the scope of discovery in this case have encompassed these themes; Defendants have already pled in defense of Plaintiff's claims: prior material breach, failed conditions precedent, and offset.

[ECF No. 48 at 4-5]. According to Defendants, this proposed conversion of affirmative defenses to affirmative claims provides them with the requisite good cause to amend. They base this on the pleading standard for affirmative claims as defined by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (holding that "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)). On the other hand "a simple statement that claims are barred as a result of a particular affirmative defense will suffice." Id. at 5.

Defendants argue that they could not have amended their Complaint earlier, because they "needed the assistance of experts to investigate, articulate, and quantify their affirmative claims for relief in accordance with the heightened standard associated with [them]." Id.

5

The Court finds this argument creative, but problematic. Plaintiff's alleged failure to comply with conditions precedent – the primary grounds for this Motion - was or should have been known to Defendants prior to the filing of this litigation, and certainly prior to the deadline for amended pleadings. Framing these allegations as affirmative claims in compliance with that deadline should not have been dependent on discovery or expert input. This is illustrated by the fact that, in drafting their objection letter, written years prior to the initiation of litigation, Defendants were able to identify, apparently without expert assistance, which supporting documents were missing from the Plaintiff's preparation of the Certified Working Capital Statement, including those relating to reported income tax assets and related adjustments, and earned/unbilled revenue. [ECF No. 48-3 at 9]. Though they may not have been able to quantify their alleged damages at that point, their "failure to comply with conditions precedent" argument in support of their Second Motion to Amend was certainly known long before the deadline for amending the pleadings had expired.

The Court also takes issue with Defendants' statement that "Dominion failed to satisfy contractually established conditions precedent before *forcing the working capital dispute into the hands of the Independent Accountants*." [ECF No. 62 at 2] (emphasis added). However, it appears, as Plaintiff asserts, that <u>Defendants</u> invoked the SPA's dispute resolution provisions. [ECF No. 50 at 1]. Significantly, Defendants have never alleged that the SPA was a contract of adhesion, or that the parties were in substantially unequal bargaining positions with respect to the drafting of the SPA's dispute resolution provisions or the selection of the Independent Accountants.[1] There is no suggestion that Defendants hesitated to refer the unresolved working

---

[1] The term "Independent Accountants" is defined in Section 1.1, the Definitions section of the SPA, as "Hein and Associates, LLP of Dallas, Texas." [ECF No. 48-2 Ex. C at 10].

capital dispute to the Independent Accountants, or that they brought the need to address alleged critical deficiencies in Dominion's documentation to the attention of the Independent Accountants. [ECF No. 48-2 at 6].   Section 2.3 (c) of the SPA provides that "[a]ny items in dispute not resolved [by the parties] *may be referred . . . by the [Sellers] or the Buyer* to the Independent Accountants. [ECF No. 48-2 Ex. C at 43] (emphasis added).[2]  Plaintiff's alleged failure to comply with conditions precedent could have been raised as an affirmative claim by the deadline for amended pleadings, and Defendants have failed to show good cause for neglecting to do so.

   Defendants' delay in articulating the claims raised in the pending Motion is also apparent in their response to Plaintiff's Motion to Dismiss Count III of Defendants' first Counterclaims. Defendants asserted that, as of that point, they had sufficient detail, based on the production of documents and non-party subpoenas from August to November 2011, to support fraud claims that are essentially the same as those raised here.  Particular reference was made to the deposition of Amy Anthony in October 2011. [ECF No. 29 at 2-3].  This assertion casts doubt on Defendants' contention that they could not have satisfied the <u>Twombly</u> standard as of the filing of their first Amended Answer.  This is particularly apparent with respect to the allegation that the Independent Accountants' Report did not comport with generally accepted accounting principles ("GAAP").  The Accountants' Report, dated May 12, 2009, expressly states as much:

> On April 8, 2009, a Scope Conference was held to discuss the specific working capital items in dispute and determine the tasks to be performed by H & A.  We have adjusted the Certified Working

---

   [2]  The Court notes the use of the word "may" as opposed to the word "must."  Defendants argue that by the time the accounting dispute was referred to the Independent Accountants, Dominion had already breached the Agreement. Defendants do not contend that they were precluded from taking legal action before the referral in order to prevent what seems to have been a reasonably foreseeable situation.

> Capital Statement, which was delivered by the Buyer to the Seller pursuant to the Agreement, and determined the Final Working Capital Statement. A summary of the work performed is included in the following pages of this letter. ***The information in this letter is based on information provided to us, which has not been examined or reviewed by us in accordance with attestation standards promulgated by the American Institute of Certified Public Accountants ("AICPA").***

[ECF No. 48-3 at 14] (emphasis added). The SPA did not require that the Accountants' Report satisfy GAAP. In fact, the Independent Accountants did exactly what the SPA obligated them to do. They did not set and were not responsible for setting the accounting standards applicable to their conclusions. Section 2.3 (c) of the SPA reads in pertinent part:

> In making its [sic] determination, the Independent Accountants will only consider the issues in dispute and placed before it [sic]. The Representative and the Buyer shall provide or make available all documents and information as are reasonably required by the Independent Accountants to make their determination. The Independent Accounts shall make their decision ***solely on the basis of the evidence and position papers presented to them.***

[ECF No 48-2 at 43] (emphasis added). Defendants had ample opportunity to raise the GAAP issue at the outset of the litigation. In any event, the District Court considered and disposed of this argument in adopting the Report and Recommendation of the Magistrate Judge. [ECF No. 47].

**Fraud, Bad Faith, Partiality, Deception, and the Need for the Expert's Report**

Last, Defendants contend that only now are they able to articulate facts sufficient to support vacating the Independent Accountants' Report on the basis of Plaintiff's fraud, bad faith, partiality, and deception. "Defendants learned of these new facts as a result of the work of their expert . . . who has been conducting an investigation in this matter in preparation for Defendants' expert designation deadline of August 15, 2012." [ECF No. 48 at 2]. In fact, none of the fraud-

related facts alleged derive from the Expert's Report. They are instead taken from deposition testimony and documents obtained through discovery.

Rather than paraphrase the allegations of fraud and the evidence cited to support them, the Court draws directly from Defendants' brief in support of the pending Motion to Amend:

> Defendants have a good faith basis to believe that Mike Rose [identified as a Corporate Representative of Dominion] engaged in fraud during his discussion with [the Independent Accountants] relative to the accounting treatment of Income Taxes Payable and Receivable. Importantly, the decision that Plaintiff properly accounted for these items in the Certified Working Capital Statement was based entirely on discussions with Mr. Rose and review of the SPA. Yet the SPA says nothing about the exclusion of all other tax effects and Mike Rose testified at deposition that he was not involved in preparing the Certified Working Capital Statement nor did he direct its preparation. Further, review of [the Accountants'] file . . . reveals no notes or other indicators as to what Mike Rose shared . . . regarding the excluded tax effects. As a result, either Mike Rose lied to [the Independent Accountants] regarding his knowledge about the exclusion of tax effects or [the Accountants] adopted Plaintiff's methodology with no support. Either way, it is undisputed that [the Accountants] never . . . contact[ed] the [corporations'] auditors to determine how these tax effects had been treated in the past. As a result, with respect to the [Independent Accountants'] review of the Income Tax assets, its conclusions were the product of fraud, bad faith, partiality, and deception and are subject to attack in this litigation.

[ECF No. 48 at 17-18] (internal citations omitted). Defendants make the same argument more succinctly elsewhere in their brief: "Given the contradiction between (1) [the Accountants'] statement that it relied on conversations with Mike Rose . . . and (2) Mike Rose's statement at deposition that he did not prepare the Certified Working Capital Statement or direct its preparation, Defendants have a good faith basis to believe that Mike Rose made certain misrepresentations to [the Accountants] concerning appropriate tax treatment for the tax assets in question. Plaintiff's fraud and material breaches have caused Defendants injury . . . ." Id. at 12.

9

Defendants argue that Rose's interaction with the Independent Accountants brings this matter within the parameters of dicta in Julian v. Julian, Civil Action No. 1892-VCP, 2010 WL 1068192 (Del. Ch. March 22, 2010).[3] There, the Court wrote: "[W]hen the parties establish a binding dispute resolution procedure similar to arbitration, courts typically should not interfere with the decision resulting from that procedure other than in the most egregious circumstances." Id. at *11. In order to justify consideration by a court, there must be "evidence that the [decision] is the product of fraud, bad faith, partiality or deception." Id. The Court stated that under the Delaware Uniform Arbitration Act, which has been adopted in that state,[4] the Court may vacate an arbitral award only if:

> (1) the award was procured by fraud or other undue means, (2) the arbitrator exhibited clear partiality or corruption, (3) the arbitrator exceeded or imperfectly executed his authority, (4) the arbitrator refused to appropriately postpone a hearing, hear material evidence, or guarantee adequate notice or due process, or (5) no valid arbitration agreement existed, the terms of the arbitration agreement were not complied with, or the arbitrated claim was barred by a time limitation.

Id. at n. 83. The Court fails to see how the "new" allegations regarding Rose's interaction with the Independent Accountants support the fraud-related claim. Those facts, even if accepted as true, are insufficient to raise a plausible claim for relief on any of the grounds identified in the DUAA. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).

Fed. R. Civ. P. 9(b) requires that fraud be pled with particularity. Detail in pleading fraud is also required under Delaware law. In order to state a claim for fraud, the following elements must be alleged: (1) a false representation, usually of fact; (2) knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to

---

[3] The SPA is governed by the laws of the State of Delaware. [ECF No. 48-2 at 81].

[4] See Beebe Med, Ctr, Inc. v. Insight Health Serv. Corp, 751 A.2d 426, 433 (Del. Ch. 1999).

10

induce the other parties to act or to refrain from acting; (4) action or inaction taken in justifiable reliance upon the representation; and (5) damage resulting from such reliance. Univ. Cap. Mgmt., Inc. v. Micco World, Inc., C.A. No. N10C-07-039-RRC, 2012 WL 1413598 at *2 (Del. Super. Feb. 1, 2012) (citing Crowhorn v. Nationwide Mut. Ins. Co., No. Civ. A00-06-010, 2001 WL 695542 at *4 (Del. Super., April 26, 2001) (quoting Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1074 (Del.1983)). The Court finds that the "fraud" alleged in support of the Second Motion to Amend fails to satisfy the specificity requirements of the Federal Rule or state a claim under Delaware law. Those allegations do not, therefore, provide good cause for the Court to grant the Defendants' current Motion to Amend.

Defendants state that their pending Motion raises two issues distinct from those raised before – Plaintiff's failure to comply with conditions precedent to the dispute resolution process, and newly discovered evidence of fraud. The first issue is untimely, and, in any event has been resolved by the District Court, and the allegations of fraud fail to state a claim under Delaware law. As a result, the Amendments sought are futile,[5] and for purposes of the pending Motion to Amend, the Expert Report is irrelevant. The Defendants' Motion to File a Second Amended Answer and Counterclaims will be denied. Insofar as the Expert Report was offered in support

---

[5] Thus, even had the Court evaluated the Defendants' Motion to Amend under the more liberal standard set out in Fed. R. Civ. P. 15, the Court's decision would not have changed. A party may file a second amended complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). This Rule further provides that "[t]he court should freely give leave [to amend] when justice so requires." Id. The "grant or denial of an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)). The futility factor alone is enough to convince the Court that Defendants' Second Motion to Amend should be denied, although delay in asserting certain claims is also relevant.

of Defendants' Motion to Amend, it follows that Plaintiff's Motion to Strike will be denied as moot. An appropriate Order follows.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of filing of this Order to file an appeal to the District Judge, which includes the basis for objection to this Order. Any party opposing the appeal shall have fourteen (14) days from the date of service of the notice of appeal to respond thereto. Failure to file a timely notice of appeal will constitute a waiver of any appellate rights.

Dated: October 3, 2012

By the Court,

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:   All attorneys of record via CM-ECF